**Phillip Torres RODRIGUEZ, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 39193.**

Court of Criminal Appeals of Texas.

March 2, 1966.

Rehearing Denied April 27, 1966.

John J. Browne, Houston (On Appeal Only), for appellant.

Frank Briscoe, Dist. Atty., James C. Brough and Carol S. Vance, Asst. Dist. Attys., Houston, and Leon B. Douglas, State's Atty., Austin, for the State.

McDONALD, Presiding Judge.

The offense is murder with malice; the punishment, 99 years confinement in the Texas Department of Corrections.

It is undisputed that appellant stabbed Mike Ramirez during a bar-room fight in Harris County on October 7, 1963, and that Ramirez died eleven days later in Ben Taub Hospital after the knife wound had partially healed. The evidence reflects that there had been ill feelings between the appellant and the deceased for some time preceding the killing, and that they had already had one fight earlier that day, after which appellant left the bar for about an hour. The stabbing occurred after appellant walked over to the deceased's table shortly after his return to the bar. Although he contended that the deceased was the aggressor, appellant presented no evidence to corroborate his account of the fight, and the deceased was apparently unarmed. Appellant's credibility was compromised by his admission that he had been in and out of jail and prison four times during the past eight years for felonies or misdemeanors involving moral turpitude, and that he had been out of jail for only about 10 months since 1956.

Appellant predicates his appeal upon the contention that the state failed to establish a causal connection between appellant's un-

lawful act and the deceased's death, and that the evidence is therefore insufficient to support the jury's verdict of guilty.

To prove that death resulted from the criminal agency of appellant, the state called Dr. W. W. Coulter as a witness and established that he had fifty years experience in the practice of medicine, during forty of which he had specialized in the field of pathology, and that he had performed thousands of autopsies and was qualified to determine cause of death. Dr. Coulter stated that he had performed an autopsy on the body of the deceased. Below are excerpts from his testimony:

Q: "And what is your opinion as to the cause of death?"

A: "Embolus of the lungs and stab wound of the chest, I mean abdomen."

\* \* \* \* \* \*

Q: "Approximately how deep was the stab wound, Dr. Coulter?

A: "It was over four inches."

On cross-examination:

Q: "Well, where did the blood clot come from?"

A: "I don't know."

Q: "Well, how was that blood clot connected with the stab wound that had been repaired?"

A: "Because that is a frequent occurrence, and embolus, after an operation or an injury. It could come to any one of the arteries around the stomach or the colon."

\* \* \* \* \* \*

Q: "Could the blood clot have been formed from any other condition?"

A: "I don't know. It usually follows an injury or an operation."

\* \* \* \* \* \*

A: "I say that this one was caused from the operation."

Q: "How was it caused from the operation sir?"

A: "Because that's the only source that it could have been caused from."

\* \* \* \* \* \*

Q: "And I assume then that you drew your conclusion from the fact that he did have this stab wound which was healing and from the fact that you could not find any other cause?"

A: "Yes."

\* \* \* \* \* \*

Q: "A bruise could have healed in ten or twelve days and not have been noticable, could it not, doctor?"

A: "It could have, but not enough to—a bruise, enough to detach a blood clot, would have been observed in that time."

Q: "Well, how much injury would you estimate it would take to cause such a blood clot?"

A: "One that would destroy the blood vessel."

\* \* \* \* \* \*

A: "We found a number of vessels that had been destroyed and tied off from the operation."

\* \* \* \* \* \*

A: "That's my opinion, it came from the stab wound."

\* \* \* \* \* \*

A: "It could have started from any portion of the body, but in my opinion, it started from the result of the stab wound."

\* \* \* \* \* \*

Q: "So the clot could have formed just as easily from the incision made by

the operating physician as it could have by the stab wound, is that true?"

A: "Yes, it could be, but he would have not needed the operation unless he had the stab wound."

On re-direct examination:

Q: "And what would have occurred if no operation had been performed with these arteries and blood vessels cut as this knife had cut them?"

A: "He would have died from internal hemorrhage or peritonitis."

Q: "So the operation was an absolute necessity to save his life?"

A: "Yes."

\* \* \* \* \* \*

Q: "And I believe you stated that from the autopsy there were no other injuries at all outside of the stab wound, or the operation that was performed due to the stab wound, that could have caused this blood clot in your opinion, is that correct?"

A: "Yes, sir."

From this testimony, the jury was justified in concluding that the death of the deceased was caused by an embolus resulting from the wound inflicted upon the deceased by appellant, or from the operation made necessary by this wound. Wright v. State, Tex.Cr.App., 388 S.W.2d 703. There is no evidence of neglect or improper treatment while the deceased was hospitalized, nor is there evidence of any independent cause of death.

The jury rejected appellant's theory of self-defense.

We find the evidence sufficient to support their verdict.

Finding no reversible error, the judgment is affirmed.